**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| ANGELA LEWIS, | * | |
| | * | |
| Claimant, | * | |
| | * | |
| vs. | * | CASE NO.  5:04-CV-434 WDO-GMF |
| | * | |
| JO ANNE B. BARNHART, | * | |
| COMMISSIONER OF | * | |
| SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | SOCIAL SECURITY APPEAL |
| _____ | * | |

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for social security disability benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and she seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

authority given in the Social Security Act.  20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a five-step procedure.  20 C.F.R. § 404.1520, Appendix 1, Part 404.  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

## ISSUES

I.   **Whether the ALJ erred in his credibility assessment of Claimant?**

II.  **Whether the ALJ erred in not obtaining a second psychological or psychiatric examination?**

III. **Whether the ALJ erred in failing to obtain a consultative neuropsychological examination?**

### Administrative Proceedings

Claimant filed an application for social security disability benefits on May 10, 2002. (R-56). Her application was denied initially and upon reconsideration. The Claimant then requested a hearing in front of an administrative law judge (ALJ) which was held on April 13, 2004. (R-554). Subsequent to the hearing, the ALJ found that the Claimant was not disabled in a decision dated October 13, 2004. (R- 11-24). Claimant requested review of the ALJ's finding by the Appeals Council and on November 12, 2004, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (R-6).

### Statement of Facts and Evidence

In his decision, the ALJ found that Claimant had severe impairments consisting of an adjustment disorder with mixed anxiety and depressed mood, history of pneumonia, asthma, and somatoform disorder. (R-19). The ALJ found, however, that those impairments, either alone or in combination, did not meet or equal any of the relevant Listings. *Id.* The ALJ then found that Claimant retained the residual functional capacity to perform light exertional level work with additional limitations of: no climbing of ladders, ropes or scaffold; simple, routine, repetitive tasks; and limited contact with the public. (R- 21).

### DISCUSSION

As all three of the aforementioned issues essentially deal with the subject of an alleged conversion disorder, they will be addressed together. A circular argument has been created in this case. The Government argues that Claimant manifests pain and symptoms that have

not been supported by objective medical evidence of a physical cause. (Commissioner's Brief, p. 3-4). Claimant does not dispute this, but rather argues that the lack of a physiological cause is the hallmark of conversion disorder. (Claimant's Reply Brief, p.2). Claimant argues that she may have organic brain damage caused by one of her physical problems and that said brain damage may be causing a psychological disorder which causes her to manifest physical symptoms that mimic a stroke and other illnesses or disorders. (Claimant's Brief, p. 19-20). After numerous medical tests for a physiological cause for her symptoms, Claimant was diagnosed with conversion disorder by Dr. Odemuyiwa. (R-165, 172, 176-177). Although there is no evidence that Dr. Odemuyiwa specializes in neurology, psychology, psychiatry, or neuropsychology, he had repeated contact with Claimant over a period of time. Furthermore, Dr. Odemuyiwa had access to emergency room and inpatient medical records that showed Claimant had not, in fact, suffered a stroke. The consulting psychologist, Dick Maierhofer, PhD., was informed at the consultation that Claimant had suffered a stroke. Thus, he attributed the visible difficulty Claimant was having with her left side and speech as limitations caused by a stroke. (R-186-187). Dr. Maierhofer, it appears, did not know that after many medical tests, there had been no documented physiological cause for the alleged paralysis on the left side of Claimant's body. (R-184-189).

Claimant argues that the ALJ should have ordered a second consultative examination with a psychologist or psychiatrist as to Claimant's somatoform disorder and a neuropsychologist to examine Claimant for organic brain damage. (Claimant's Brief, p.18-

19).  Claimant argues that this obligation arises because the ALJ has a basic obligation to develop a full and fair record. (Claimant's Brief, p.18); citing *Graham v. Apfel,* 129 F.3d 1420, 1423 (11th Cir. 1997).  Claimant further argues that this broad obligation includes a specific duty to order a consultative examination if one is needed to make an informed decision. (Claimant's Brief, p.18); citing *Holladay v.* Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988).  The applicable code section for ordering a consultative examination is 20 C.F.R. § 416.912(f), which states:

> (f)  *Need for consultative examination*.  If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.  See §§ 416.917 through 416.919t for the rules governing the consultative examination process.  Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

20 C.F.R. §416.912(f).  Because this type of hearing is not an adversarial one, the ALJ has a duty to fully and fairly develop the record. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997), citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981).  In the instant action, the record demonstrates that plaintiff was represented by counsel.  Thus, the ALJ did not have a special duty to Claimant.  Plaintiff claims that a full and fair record would have

been developed had a second psychological or psychiatric and a neuropsychological consultative examination been performed.  The Eleventh Circuit has held that the fundamental obligation to develop a complete and fair record may involve requiring a consultative examination of the claimant. *Smith v. Bowen,* 792 F.2d 1547, 1551 (11th Cir.1986); *See Reeves v. Heckler,* 734 F.2d 519, 521-522 (11th Cir.1984).  "Consultative examinations are not required by statute, but the regulations provide for them where warranted." *Smith* at 1551; 20 C.F.R. § 404.1517 (2000).  Therefore, it would appear that an ALJ has committed reversible error where he/she chose not to order a consultative examination when such an examination is deemed necessary "to make an informed decision." *Reeves,* 734 F.2d at 522 n. 1.

While, the onus is on the Plaintiff to provide to the Commissioner the medical evidence to support her impairment allegations, the ALJ must still follow the standards as set forth in the code, the rules and the regulations.  *See,* 20 C.F.R. §§ 404.1512(a), (c); 416.912(a), (c).  At the very least, the evidence in the medical record as to Claimant's somatoform disorder[2], whether it be a conversion disorder or not, was tainted by a medically unfounded belief on the part of the consultative examiner that Claimant's physical manifestations were caused by a stroke.  Thus, the ALJ should have ordered a second psychological consultative examination for clarification purposes. Furthermore, the medical evidence supplied by the records of Drs. Rao and Kolanu, to which the ALJ referred to

---

[2] It should be noted that the ALJ found that the claimant had severe impairments, one of which was categorized generally as a somatoform disorder.  (R-19).

extensively, also support a possible diagnosis of conversion disorder. (R-18). Based on the aforementioned facts, this court believes that the record was inadequate for the ALJ to make a determination. Therefore, this court recommends that this case be remanded for the ALJ to order a neuropsychological examination as to any possible organic brain damage which may be causing Claimant's symptoms and a psychiatric, or second psychological consultative evaluation as to Claimant's alleged somatoform disorder. See *Steeves v. Barnhart*, 2005 WL 757877 (D.Me. March 14, 2005) and *Matos v. Barnhart* 2004 WL 1846136 (D.Kan. June 3, 2004) (Not Reported in F. Supp.). The ALJ should supply said evaluator with Claimant's medical records, including a summary of Claimant's documented physical ailments and their causes. After evaluation, the ALJ should discuss the evidence which supports his residual functional capacity assessment, including, but not limited to: the results of Claimant's consultative examinations; how said results effect the ALJ's assessment of Claimant's credibility; what, if any, new limitations were found; and once again, the weight given to Claimant's treating physicians, the consultative examiners, and the non-examining medical consultants.

## CONCLUSION

In reviewing the record, it appears that the ALJ's decision is legally inadequate. Therefore, having found that the ALJ's findings and discussion insufficient to permit this court to determine whether the ALJ properly considered the Claimant's alleged somatoform disorder and/or organic brain damage, and whether the ALJ applied the correct legal standards, this

court recommends that the claim be remanded to the Commissioner to order the aformentioned consultative examinations. The ALJ should then re-evaluate Steps Three, Four and Five of the sequential disability analysis to determine whether the Claimant can return to past work or perform any other work based on her limitations.

**WHEREFORE**, **IT IS RECOMMENDED** that this case be **REVERSED** and **REMANDED** for further administrative action as set out above.

Pursuant to 28 U.S.C. § 636(b)(1), written objections to this recommendation may be served and filed with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this Recommendation.

THIS the 30th day of December, 2005.

>S/G. MALLON FAIRCLOTH
>UNITED STATES MAGISTRATE JUDGE

mZc